PEOPLE ex rel. BLACK v. McKAY, Police Com'r.

(Supreme Court, Appellate Division, Second Department. January 29, 1915.)

MUNICIPAL CORPORATIONS (§ 185*)—POLICEMEN—DISMISSAL—GROUNDS.

    Where, though an alleged assault was not committed in the presence of a policeman, so as to give him authority to arrest without a warrant, under Code Cr. Proc. § 177, the policeman did not intend to arrest any one, but, because of the charges and countercharges by the parties, told them all to go with him to the station house, his dismissal on the ground that he arrested one of the parties, and without authority or reason delivered him to another officer, and that he failed and neglected to inform the lieutenant on desk duty at the station house of the circumstances attending the arrest, he merely stating to the lieutenant that he simply accompanied the parties in, was not justified, as there was no intentional violation by him of the rules of the department.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. § 185.*]

    Thomas, J., dissenting.

Certiorari by the People, on relation of William R. Black, against Douglas I. McKay, as Police Commissioner of the City of New York, to review a determination of such Commissioner dismissing the relator from the police force. Determination annulled, and relator reinstated.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-TON, and PUTNAM, JJ.

Jacob Rouss, of New York City, for relator.

Edward A. Freshman, of Brooklyn (Thomas F. Magner, of Brooklyn, on the brief), for respondent.

PER CURIAM. The relator was dismissed from the police force of New York City in that he arrested Dunleavy and without authority or reason delivered him to a brother officer, and in that he failed and neglected to inform the lieutenant on desk duty at the station house of the circumstances attending the arrest. Dunleavy's lad fetched a bottle of milk from Bernstein's grocery shop, and was sent back with the milk because it was unfit. Mrs. Bernstein refused to return the money paid. Then Dunleavy went to the shop, and there was a quarrel between him and the Bernsteins, man and wife. Mrs. Bernstein sent out a neighbor for a policeman. The relator responded to the call. He found Dunleavy there holding the door, but he did not witness any crime. Mrs. Bernstein said that Dunleavy had struck her with the bottle, and that she wished to have Dunleavy locked up, or to press a charge against him. The relator took Dunleavy, the Bernsteins, and their witnesses to the station house. On their way they met Shea, a patrolman, who had been summoned by young Dunleavy to the Bernsteins' shop, as there was a fight there, and he joined them. The party proceeded to the station house. The relator says that the Bernsteins' shop was not on his post, but was on Shea's post; that he turned the case over to Shea outside of the station house; and that then they entered the house, and that he told the lieutenant that he simply accompanied them in. The relator's explanation is that Dunleavy, who was not a policeman, cried out to him, when he first arrived at the shop, "I have all these people here under arrest;" that there were charges and countercharges; that no crime was committed in his presence; and that he took them all to the station house "to have it settled practically." He testified to the trial deputy at the outset that he did not practically put Dunleavy under arrest, but that he told them all to come to the station house; it was a case of countercharges. We think that this was the exact situation, despite the fact that the trial commissioner, by constant badgering, made him "concede" that he "put them under arrest." He had no right to put any one of them under arrest without a warrant (section 177, Code of Criminal Procedure), and we believe that he did not intend so to do, and that he did not regard any of these people as under arrest when he turned them over to Officer Shea, or when he made his said statement to the lieutenant. If he did not, then there was no intentional violation of the rules invoked against him. We do not approve of the manner in which this trial was conducted, for we think that it was unfair and oppressive to the relator.

The determination is annulled, with $50 costs and disbursements, and the relator is restored to the force. All concur, except THOMAS, J., who dissents.